# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CHARLES LANE, III,

      Petitioner,

vs.

D.W. NEVEN, *et al.*,

      Respondents.

2:14-cv-00794-APG-PAL

**ORDER**

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Charles Lane, III, a Nevada prisoner. ECF No. 12.

I. BACKGROUND[1]

On July 30, 2009, a jury in the Eighth Judicial District Court of the State of Nevada found Lane guilty of (1) conspiracy to commit robbery, (2) burglary while in possession of a deadly weapon, (3) attempted robbery with use of a deadly weapon, (4) attempted murder with use of a deadly weapon, (5) battery with intent to commit a crime, and (6) battery with use of a deadly weapon with substantial bodily harm. On August 13, 2009, the State filed a notice of intent to seek punishment as a habitual criminal. After a sentencing hearing on October 14, 2009, the trial court

---

[1] This history was compiled from exhibits filed at ECF Nos. 13, 17-23, and this court's own docket entries.

entered a judgment of conviction on October 27, 2009, sentencing Lane under the small habitual criminal statute as to Counts 1, 2, 3, 5, and 6; and ordering Lane to serve concurrent sentences for Counts 1, 2, 3, 5, and 6 for a maximum of 240 months to run consecutively to Count 4 for a maximum of 180 months

Lane appealed. The Nevada Supreme Court affirmed his conviction in an order dated July 15, 2010.

On May 19, 2011, Lane filed a post-conviction petition for a writ of habeas corpus in proper person. The state district court denied the petition on August 15, 2011. Lane appealed, and the Nevada Supreme Court reversed and remanded for appointment of counsel to assist Lane in the post-conviction proceedings.

On October 9, 2012, Lane filed a supplement to his state post-conviction petition for a writ of habeas corpus. The state district court denied the petition in an order filed on May 2, 2013. Lane appealed, and the Nevada Supreme Court affirmed.

Lane mailed his federal habeas petition to this court on May 15, 2014. With the assistance of appointed counsel, Lane filed an amended petition on July 14, 2015.

Respondents moved to dismiss all of the grounds in the amended petition, arguing that the amended petition was untimely, Ground Two was unexhausted, and Ground Three was procedurally defaulted. In opposition, Lane argued that Ground Two was technically exhausted but procedurally defaulted and that he could establish good cause and prejudice to overcome that default due to ineffective assistance of post-conviction counsel in failing to raise the ineffective assistance of appellate counsel claims in Ground Two.

This court granted respondents' motion to dismiss, in part, dismissing Ground Three, and concluding that Ground Two was technically exhausted but procedurally defaulted absent a showing of good cause and prejudice to overcome the default. The court deferred ruling on the cause and

prejudice issue until the merits of Ground Two were briefed in respondents' answer and petitioner's reply brief.

## II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the

doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."). Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

### III. ANALYSIS OF CLAIMS

**Ground One**

In Ground One of the amended petition, Lane contends that his conviction for conspiracy to commit robbery is not supported by sufficient evidence. In support of this claim, Lane relies on the trial testimony of Alfred Larios, the victim, and Kartar Singh, who in relation to the same incident had previously pled guilty to attempted robbery with use of a deadly weapon and conspiracy to

4

commit robbery. Specifically, Lane alleges that Larios did not identify Lane as one of the individuals in the bathroom (where the robbery occurred), or as the person who stabbed or attempted to rob him. He further alleges that Singh testified that (1) Lane had nothing to do with the robbery, (2) Lane knew nothing about his intention to rob Larios, and (3) Lane did not assist him in any way.

Lane presented Ground One to the Nevada Supreme Court in his direct appeal. ECF No. 18-13. The Nevada Supreme Court addressed the claim as follows:

> Appellant Charles Leonard Lane, III, claims that insufficient evidence supports his convictions because the State failed to establish more than his mere presence and because his codefendant testified that they did not conspire to rob the victim. This claim lacks merit because the evidence, when viewed in the light most favorable to the State, is sufficient to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).
> 
> The jury was shown a surveillance video that depicted two men sitting at a slot bank. Lane and Kartar Singh were positively identified as the men depicted in the video. Lane repeatedly looked over toward where the victim was sitting playing blackjack. When the victim walked to the bathroom, Lane and Singh followed the victim into the bathroom. The victim testified that when he was about to wash his hands two men entered the bathroom, pushed him, and asked for his money. When he told them he did not have any money, one of the men stabbed him. The men ran away and the victim followed. When the victim got to the bathroom door, he yelled that he had just been stabbed and someone tried to rob him and he pointed at the men who did this. The surveillance video showed Lane and Singh quickly leaving the bathroom, followed by the victim who was bent over and pointing. Although Lane and Singh left the bathroom heading in opposite directions, surveillance footage showed both men leaving the casino together along with a female. Additional surveillance footage also depicted Lane, Singh, and the female arriving at the casino together. The victim sustained a life-threatening stab wound to the chest just below the heart. Singh testified that he and Lane followed the victim into the bathroom because he wanted to rob the victim. Singh further testified, however, that he and Lane went into the bathroom in order to conduct a drug transaction. Although Singh admitted that he stabbed the victim and testified that Lane did not conspire to commit the robbery with him and Lane did not take part in the robbery, it is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975). We conclude that the evidence was sufficient to support the convictions. See NRS 199.480(1) (conspiracy); NRS 200.380(1) (robbery); NRS 205.060(1), (4) (burglary); NRS 193.330(1) (attempt); NRS 193.165(1) (use of a deadly weapon); NRS 200.010 (murder); NRS 200.400(l)(a) (battery with intent to commit a crime); NRS 200.481(l)(a), (2)(e)(2) (battery with a deadly weapon with substantial bodily harm).

ECF No. 18-24, p. 2-6[2] (footnote omitted).

The Nevada Supreme Court correctly identified the "rational factfinder" standard established in *Jackson* as the federal law standard to test whether sufficient evidence supports a state conviction. *See Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). And because this court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this court "think[s] the state court made a mistake," the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id*.

Under Nevada law, "mere association is insufficient to support a charge of conspiracy." *Sanders v. State*, 874 P.2d 1239, 1240 (Nev. 1994). Even so, conspiracy is rarely shown by direct evidence, and is instead usually inferred by circumstantial evidence and the conduct of the parties. *Rowland v. State*, 39 P.3d 114, 123 (Nev. 2002). "In particular, a conspiracy conviction may be supported by 'a coordinated series of acts,' in furtherance of the underlying offense, 'sufficient to infer the existence of an agreement.'" *Doyle v. State*, 921 P.2d 901, 911 (Nev. 1996) *overruled on other grounds by Kaczmarek v. State*, 91 P.3d 16 (Nev. 2004) (quoted source omitted).

Here, the victim Larios' failure to identify Lane as one of the men who accosted him in the bathroom does not undermine the evidence supporting the conspiracy charge against Lane. It is not disputed that Lane was the man with Singh in the bathroom and overwhelming evidence presented at trial, including surveillance video and Singh's testimony, supports that fact. The absence of testimony from Larios identifying Lane as one of the assailants does not bear on whether Lane had conspired with Singh to rob him.

---

[2] References to page numbers in the record are based on CM/ECF pagination.

6

Singh's testimony that Lane was not aware beforehand of his (Singh's) intent to rob Larios was relevant as to the existence of a conspiracy. However, a rational factfinder would have had ample reason to question Singh's credibility on that point. On direct examination, Singh denied, despite clear evidence to the contrary, that Lane was the person seen alongside him in the surveillance videos. ECF No. 17-27, p. 8-10. Prior to his cross-examination, Singh conferred with Lane's attorney. *Id*., p. 15-16. Then, on cross-examination, Singh admitted that Lane was the person with him during the robbery, but claimed that Lane was ignorant of his plan to rob Larios. *Id*., p. 14-15. On re-direct, Singh admitted that he did not want to help the State and did not want to be labeled a snitch and stated that "to tell on somebody is wrong." *Id*., p. 15-16. It was apparent, based on his testimony as a whole, that Singh was attempting to exculpate Lane. The jury was also informed that Singh had pled guilty to conspiring with Lane to commit the robbery. *Id*., p. 11.

As recounted by the Nevada Supreme Court, the surveillance videos showed Lane and Singh engage in a coordinated series of acts in furtherance of an attempt to rob Larios. ECF No. 17-26, p. 10-12. Larios testified that *two* men confronted him in the bathroom and demanded his money. *Id*., p. 4-5. This allowed a rational factfinder to infer the existence of an agreement between Lane and Singh to commit the robbery. While the evidence presented at trial to prove a conspiracy is not overwhelming, it is sufficient for this court to conclude that the Nevada Supreme Court's decision to deny relief was not "objectively unreasonable" under the *Jackson* standard.

Ground One is denied.

**Ground Two**

In Ground Two of the amended petition, Lane alleges that he was denied his right to effective assistance of appellate counsel under the Sixth and Fourteenth Amendments. Specifically, Lane argues that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting all of his convictions, not just the conspiracy to commit robbery conviction.

As noted above, this court determined that Ground Two is technically exhausted, but procedurally barred. The court further determined that Lane could potentially demonstrate that his procedural default of the claim could be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Court held that a prisoner may establish cause for a default of a trial ineffective assistance of counsel claim by demonstrating that his state post-conviction counsel provided ineffective assistance in relation to the state proceeding where the claim should have first been raised. *Martinez*, 566 U.S. at 14.

The Ninth Circuit extended *Martinez* to include defaulted claims of ineffective assistance of counsel on direct appeal, which would include Ground Two. *See Nguyen v. Curry*, 736 F.3d 1287, 1295 (9th Cir. 2013). Recently, however, the Supreme Court addressed this very issue – i.e., whether "to extend *Martinez* to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state post-conviction counsel provides ineffective assistance by failing to raise that claim." *Davila v. David*, 137 S. Ct. 2058, 2065 (2017). The Court declined to permit such an expansion of *Martinez*. *Id*. at 2070 ("Given that petitioner's proposed rule would likely generate high systemic costs and low systemic benefits, and that the unique concerns of *Martinez* are not implicated in cases like his, we do not think equity requires an expansion of *Martinez*.").

Because of the holding in *Davila*, this court must reject Lane's argument that the default of Ground Two can be excused under *Martinez*. Lane has demonstrated no other grounds upon which the default might be excused.

Ground Two is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Lane's first amended petition for habeas relief is denied.

\* \* \* \* \* \* \*

8

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Lane's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any procedural issues or any of Lane's habeas claims.

**IT IS THEREFORE ORDERED** that the first amended petition for writ of habeas corpus (ECF No. 12) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

**IT IS FURTHER ORDERED** that all pending motions for extension of time (ECF Nos. 27/29/30) are GRANTED *nunc pro tunc* as of their respective filing dates.

Dated: August 21, 2017,

_____
UNITED STATES DISTRICT JUDGE